WESTCHESTER FIRE INS. CO. et al. v. GOODMAN. (No. 5839.)

(Court of Civil Appeals of Texas. Austin. April 10, 1918.)

1. TRIAL ⚭253(5) — MATTERS IN ISSUE — INSTRUCTION.
    In action on fire policies, where pleadings and evidence raised issues whether adjuster's agreement covered only property inventoried or all property insured, court properly refused insurer's charge that, if jury found for plaintiff, they should fix amount of his recovery in accordance with adjuster's agreement.

2. APPEAL AND ERROR ⚭931(4) — PRESUMPTIONS FAVORING TRIAL COURT — FINDING — STATUTE.
    Where no charges were requested by defendants as to either of issues referred to in counter propositions submitted by plaintiff in reply to assignment of error, if finding for plaintiff on either or all of such issues was necessary to sustain judgment, under Vernon's Sayles' Ann. Civ. St. 1914, art. 1985, it will be presumed trial court made such finding.

Error from District Court, McLennan County; Tom L. McCullough, Judge.

Suits by Max Goodman against the Westchester Fire Insurance Company and the Western Assurance Company consolidated for trial. To review judgment for plaintiff, defendants bring error. Affirmed.

Thompson, Knight, Baker & Harris and Will C. Thompson, all of Dallas, for plaintiffs in error. E. B. Baker and W. L. Eason, both of Waco, for defendant in error.

KEY, C. J. The following statement of the nature and result of this suit is copied from the brief of plaintiffs in error:

"These suits were begun in McLennan county, Tex., and, under an agreement to consolidate, the suits against the Westchester Fire Insurance Company and the Western Assurance Company were consolidated for the purpose of trial and appeal. And the other suits brought by Max Goodman by agreement are to abide the result of the consolidated case under the terms of such agreement.

"By his amended petition, the plaintiff, Max Goodman, alleged the same facts against the Westchester Fire Insurance Company and against the Western Assurance Company; and for the purpose of this statement only one of such petitions will be placed in the record.

"Plaintiff alleged: That on February 2, 1915, he was the owner of certain personal property in McLennan county, Tex., situated in Waco, at No. 215 on the south side of the square, which building was described in the policy sued on, the personal property being described as a stock of wines, liquors, beer, mineral waters, bottles, cartons, labels, wrappers, caps, material for manufacturing cartons, cigars, tobacco, and other merchandise not more hazardous usual to saloons. That on such case the defendant issued its policy of insurance in consideration of a premium, it insured the plaintiff in the Western suit in the sum of $1,000 and in the Westchester suit in the sum of $2,000 upon the personal property therein described from February 2, 1915, to February 2, 1916. That on May 18, 1915, while the policy was in force, a fire occurred, and the fire department of Waco attempted to extinguish it by the means of water, and as a result a part of the personal property was totally destroyed by fire and water, and the remainder was damaged by fire and water, and the plaintiff's loss was the direct and proximate result of the fire. That the actual cash value of all of the insured property immediately preceding the fire was $10,422.55, and the actual cash value of the insured property immediately after the fire was $2,334.12; so that plaintiff sustained an actual loss of $8,108.53. That the actual cash value of that part of the insured property totally destroyed beyond identification was $3,822.97. That the total amount of damage and loss on that part of the personal property damaged but not actually destroyed beyond identification was $4,285.56. That actual loss sustained by the plaintiff is $8,108.53.

"At the time of the issuance of the policy and

at the time of the fire, the personal property was the property of the plaintiff. That they duly performed all the conditions of the policy and made proof of loss on July 2, 1915, more than 60 days before the suit, and gave notice and proof of the fire to the defendant in compliance with the terms of the policy and demanded the amount due.

"On September 1, 1915, defendant denied liability. That by reason of the premises the defendant is justly indebted and bound and obligated to the plaintiff in the sum of the policy with interest from September 1, 1915, at the rate of 6 per cent. per annum. That the defendant has wholly failed and refused to pay, whereupon plaintiff prays for a judgment.

"Each company filed an identical answer in response to the petition filed against it, such answer being substantially as follows: After a general demurrer and some special exceptions and a general denial, the defendant alleged that, if the defendant held its policy, it provided, in substance, that the company should not be liable beyond the actual cash value of the property at the time of loss or damage less the proper deductions for depreciations however caused, and in no event to exceed what it would then cost the insured to repair or replace the property with material of the like kind and quality. That, subsequent to the fire, an adjuster acting for it and the plaintiff in the suit made an ascertainment and estimate of the property lost and damaged and destroyed by fire and reduced the agreement to writing as follows:

#### " 'Adjuster's Agreement.

" 'It is hereby mutually agreed between the insurance companies whose names are signed to this agreement by W. C. Miller, adjuster, and the Max Goodman Liquor Company of Waco, Tex., that on and immediately preceding the fire which occurred on the 18th day of May, 1915, by which the property described in the policies as follows: No. 106478, issued by the Commercial Union Assurance Company: No. 3910878, by the Royal Exchange Assurance Company; No. 108111, by the Western Assurance Company; policy No. 152857, by the Westchester Fire Insurance Company issued at their Waco, Tex., agency to the Max Goodman Liquor Company, Waco, Tex.—is alleged to have been destroyed and damaged.

" 'The sound value of the property at the time mentioned was $6,977.74. The total amount of such damage to said property above set out is, after a full examination, agreed upon and determined by compromise at the sum of $2,791.09, and said sum as agreed is binding and conclusive upon said parties as the value of the property and the amount of loss and damage, but shall not be construed as an admission of liability on the part of said insurance companies, and does not in any respect waive proof of loss or any other condition of said policies. The fire insurance on said property is $8,000 as per schedule below.

" 'In testimony whereof the parties have hereunto set their hands this the 3d day of June, 1915. This agreement executed in triplicate. W. C. Miller, Adjuster for Commercial Union Assurance Co. of England, Royal Exchange Ins. Co. of England, Western Assurance Co. of Canada, and Westchester Fire Insurance Co. of New York. Max Goodman Liquor Co., by Max Goodman, Sole Owner.'

#### "Schedule of Insurance.

| | |
|---|---:|
| Policy No. 106478, Commercial Union | $2,500 00 |
| Policy No. 3910878, Royal Exchange | 2,500 00 |
| Policy No. 108111, Western Assurance | 1,000 00 |
| Policy No. 152967, Westchester.. | 2,000 00 |
| Total .................... | $8,000 00 |

"That the policy also provided that the company should not be liable for a greater sum than the proportion that the amount named in said policy should bear to the total insurance; and defendant alleged that there was outstanding at the time of the fire a total insurance of $8,000, as set out in the agreement just above, and the amount named in this policy is as set out in such agreement. By virtue of the facts set out and the provision of the policy quoted, that in the event it has any liability the same shall be no more than that proportion of $2,791.09 that the amount of its policy bears to the amount of $8,000 total insurance.

"It says further on or about June 3, 1915, the plaintiff agreed in writing with it that the total amount of his damage in the fire complained of was and is the sum of $2,791.09, and that such agreement is binding and conclusive on the plaintiff, as to the value; and that, under the terms of the policy sued on, defendant, if it has any liability, can have no greater liability than that proportion of said sum that the amount of its policy bears to the $8,000 total insurance described in the policy sued on. And defendant prays that, if any liability be found against it, said liability be restricted to such sum.

"Plaintiff filed an identical supplemental petition in each suit, which said supplemental petition provided in substance as follows:

"After a general demurrer and special exceptions, he says that the adjuster's agreement was made under the following circumstances: That an adjuster visited the premises after the fire and made an investigation of the loss, and made an inventory of the damaged property that could be identified, but did not cover the property totally destroyed, and showing the value of the damaged property before the fire to be $6,977.74, which figures were submitted to the plaintiff. The plaintiff demanded that he receive a settlement for the property totally destroyed as well as for that partially destroyed, but the adjuster denied liability for any claim made by the plaintiff for merchandise totally destroyed and refused a settlement therefor, but offered to make a compromise with the plaintiff for merchandise that was capable of being inventoried and which had been inventoried, and plaintiff and adjuster orally agreed to a settlement relative to the amount due on merchandise capable of being inventoried and which had been inventoried, and it was left an open question as to the amount of personal property totally destroyed.

"The adjuster stated to the plaintiff that he could sue for the amount of property totally destroyed.

"Therefore the plaintiff and the adjuster agreed that the sound value of the property capable of being inventoried immediately preceding the fire was $6,977.74, and also agreed that the damage to such property capable of identification was $2,791.09. That the adjuster, representing all of the companies, which included the defendant, agreed to pay the plaintiff such sum immediately for the damage to the property capable of being identified and inventoried, and the plaintiff agreed to accept such sum in full settlement of this item; but no agreement was made as to the property totally destroyed and this was left an open question for litigation.

"After the oral agreement as aforesaid was made, the adjuster suggested that he desired a memorandum signed by the plaintiff showing the figures agreed upon, which memorandum the plaintiff was willing to sign. The adjuster wrote up the adjuster's agreement set up in the plaintiff's answer, intending to cover the oral agreement as made, and representing that the written instrument did cover the agreement as made, and plaintiff so understood it. That if the adjuster's agreement does not carry with it the true understanding of the parties, as above set out, the plaintiff says that the parties made a mutual mistake in using the language

contained in the agreement, that they both intended that it should express the oral agreement as above set out, and therefore the mutual mistake should be corrected and the instrument reformed to meet the agreement of the parties.

"That in the agreement it is provided that the sound value of the property at the time mentioned was $6,977.74. That the expression 'the property,' as used, was intended to mean, and did mean, the property which could be inventoried and was inventoried and capable of identification. It does not mean the entire property covered by the policy. If the technical expression included all the property, then the plaintiff says that the parties made a mutual mistake in using the language used and in failing to use language embodying the true agreement, and that the mutual mistake should be corrected in the instrument.

"If such clause does not carry the meaning expressed in the oral agreement, the instrument is ambiguous, because the expression 'the property' could mean the property inventoried or could mean the property insured; and therefore the same is subject to parol explanation. That the clause was intended to carry the meaning expressed in the oral agreement, and the parties intended that it should cover the oral agreement and so understood it, and understood that the expression 'the property' had reference only to property inventoried and was capable of identification.

"If the adjuster for the insurance company did not make a mistake, then he was guilty of fraud, in undertaking to make the written instrument differ from the oral agreement. That he intentionally and with intention to deceive plaintiff wrote the instrument aforesaid, which would not have been executed by the plaintiff had he not understood that the same was a true representation of the oral agreement. The adjuster represented that the instrument as written covered the oral agreement, and therefore plaintiff was induced to sign by the fraud of the defendant, and so the agreement is of no force.

"Plaintiff alleged that the same was void, because at the time it was made, and immediately prior to it, the adjuster informed the plaintiff that, unless he signed the same, he would be charged with arson and burning the property; but that, if he would make the agreement, the adjuster agreed and obligated himself and the defendant not to make a complaint of arson against the defendant and not to prosecute him, and that he informed the plaintiff that unless he did agree that he would have the plaintiff locked in jail, would close plaintiff's place of business, and leave town and remain away six months, during which time he would have plaintiff's business closed up; but, if the plaintiff would make the agreement, he would not have the plaintiff put in jail and would not close the plaintiff's business; and the plaintiff did then and there sign the agreement with the defendant for the consideration aforesaid, which was illegal, and the agreement was contrary to public policy and is unenforceable and null and void.

"The agreement is not binding upon the plaintiff, because the adjuster agreed with the plaintiff that, if he would execute the agreement, the adjuster would immediately return to Dallas and would send to the plaintiff draft in payment of the amount specified in the agreement that one of the inducing considerations which caused the plaintiff to execute the agreement was that he should receive the draft, equivalent to cash, immediately after executing it. That the adjuster and the defendant wholly failed and refused to carry out this agreement and did not send such draft to the plaintiff, and has not sent such draft to the plaintiff, and that draft has never been issued or delivered to the plaintiff; so that the defendant breached and failed to carry out its agreement with the plaintiff, and the agreement is not binding.

"Plaintiff further alleged that the agreement is without further consideration, in that, no benefit accrued to the plaintiff and no injury or detriment was suffered by the defendant. Same was nothing more than an admission by the parties of the amount of plaintiff's loss. The defendant did not agree to pay plaintiff any sum, and did not agree to waive proof of loss or any condition of the policy, and did not even bind itself to recognize the validity of the policy, but retained the right under the agreement to contest the validity of the policy and to refuse to pay plaintiff anything; so that the agreement is wholly without consideration.

"There is no mutuality in the agreement. Defendant did not bind itself to do anything, and merely attempted to bind the plaintiff to accept a sum of money therein specified, and did not obligate itself to pay any sum. Therefore the agreement is without mutuality and cannot be enforced.

"The agreement is not a contract and does not possess the essential elements of a contract, because it does not obligate the defendant to do or refrain from doing anything, and wholly fails to create any obligation whatever on the part of either plaintiff or the defendant; and therefore the same is not a contract and not binding, and is but an admission of the parties to the contract as to the amount of plaintiff's loss, and cannot be enforced as an agreement or contract.

"That if the adjuster's agreement is construed to mean that the total loss of plaintiff by fire was $2,791.09, that the consideration for the agreement is lacking, in that, the plaintiff's loss, as shown by the petition, was $8,108.53, and the figures first mentioned would be wholly insufficient to compensate him for his loss. That, if the instrument be construed as aforesaid, the parties made a mutual mistake with reference to the figures, and did not have all the data before them and were not acquainted with all the facts. Had they been acquainted with all the facts, the agreement would not have been made. If the above parties were laboring under misapprehension, the instrument is of no force, because it was induced by mutual mistake. That, if the allegations made are not true, then the plaintiff says in the alternative that the adjuster understood that the adjustment agreement referred to the entire insured property and the plaintiff understood that the agreement referred to property caused to be inventoried by the adjuster, so that the minds of the parties did not met, and there is no contract.

"That the adjuster's agreement is not binding on the plaintiff because it has been breached and repudiated by the defendant shown by its pleading on file which is now denying liability and repudiating it.

"Each insurance company filed a supplemental answer identical in substance, providing as follows:

"After a general demurrer and general denial, defendant alleged that the plaintiff is estopped to claim or assert the adjuster's agreement because it is not binding; that he is estopped to make such pleading because, among other reasons, the policy provides the assured should give notice of loss and, after a loss, should forthwith separate the damaged and undamaged personal property, make an inventory of it and furnish proof of loss.

"That, in the event of a disagreement as to the amount of loss, the same should be fixed by appraisers, the assured and the company each selecting one and the two so chosen selecting an umpire, and the award of any two to be binding, the finding to be made by them of the sound loss and damage.

"Defendants said that the rights reserved, under the policy are each and all valuable rights. That after the fire plaintiff by his conduct and statement led the defendant to believe, and it

did believe, that there was an agreement between them as to the sound value of the property described in the policy, and as to the loss and damage occasioned by the fire. That any reasonable person would have so believed from the acts, conduct, and statements of the plaintiff. That acting thereon the defendant permitted the plaintiff to carry out and dispose of the property damaged in the fire, and did not insist that the plaintiff separate same and put it in the best possible order and inventory it, either for future reference or to be appraised. It did not demand of the plaintiff an appraisal of such loss, for the reason that it believed the agreement solved the question of value involved, whereas, if it had been advised by the plaintiff of any such claim as he now makes, it would have insisted upon an appraisal. It would have disagreed with plaintiff as to the matter of his loss as the sum of $2,791.09 represents all the loss and damage sustained by the plaintiff, and would have demanded an appraisal and would have insisted the property be kept together that an appraisal might be had. It would have had the amount of loss and damage fixed under the alternative provision of the policy sued on different from that actually employed, by appraisal.

"But the plaintiff prevented the defendant from doing this and is now estopped to escape the binding force and effect of the adjuster's agreement already pleaded.

"The defendant says further that the agreement was signed by the plaintiff after conferring with his counsel, and that the language therein set out is plain and unambiguous. That the defendant then knew, and now knows, that the agreement contained and covered all of the property whether destroyed or damaged and is estopped by the effect thereof.

"The court submitted to the jury one issue as to whether or not the plaintiff caused or procured the fire, to which the jury answered, 'No.'

"The other issue submitted by the court to the jury was as to what amount of loss and damage the plaintiff sustained to the policy sued upon for the fire of May 18, 1915. To this issue the jury answered, '$6,427.50.'

"The court rendered judgment in favor of the plaintiff and against the defendant Western Assurance Company in the sum of $853.23, with interest from September 14, 1916, and in favor of the plaintiff and against the defendant Westchester Fire Insurance Company in the sum of $1,706.46, with interest at 6 per cent. from September 14, 1916.

"The defendants each in due time made a motion for a new trial, which motion for new trial was by the court overruled, and the defendants excepted and gave notice of appeal, and was allowed 60 days within which to prepare and file its bills of exception and statements of fact.

"Plaintiff also filed a motion for new trial which was overruled, and the plaintiff excepted. Thirty days' additional time was granted within which to prepare and file statements of fact and bills of exception.

"Max Goodman waived the filing of briefs in the trial court and agreed that they might be filed in the Court of Civil Appeals on or before February 1, 1917.

"The Westchester Fire Insurance Company duly made its application for writ of error, as did the Western Assurance Company. The Westchester Company duly filed its bond, as did the Western Assurance Company.

"Max Goodman in each of the causes and in the consolidated cause waived the issuance of citation in error and entered his appearance in the Court of Civil Appeals for the Third Supreme Judicial District of Texas at Austin.

"The plaintiffs in error come to this court complaining of the errors committed in the trial court as evidenced by the following assignments of error."

205 S.W.—10

## Opinion.

[1] The first assignment of error complains of the action of the trial court in refusing a requested charge by which the jury would have been instructed that, if they found for the plaintiff, to fix the amount of his recovery against the Westchester Insurance Company at $697.78, and against the Western Assurance Company at $348.89. The contention is that, inasmuch as appellee signed the written instrument wherein it was agreed that the sound value of the property immediately before the fire was $6,977.74, and the loss and damage by the fire thereto was $2,791.09, and that the total insurance was $8,000, and as each policy provided that the company should be liable for only its proportion of the loss, the trial court should have given the instruction referred to.

Counsel for Max Goodman have submitted 15 counter propositions, in each of which it is asserted that the requested charge was properly refused for reasons stated in such counter proposition. As to some of these counter propositions, we are unable to concur with counsel who assert them. But, with the modification hereafter stated, we do concur as to others, which are expressed as follows in the brief filed for the defendant in error:

### "Eighth Counter Proposition.

"(1) *Abstract Proposition.*—When one contract is agreed upon by parol and a different contract is expressed in writing, the latter is not binding as a matter of law because of mutual mistake.

"(2) *Applied Proposition.*—The first assignment should be overruled, because plaintiff's pleadings and evidence show that the parties to the adjuster's agreement made an oral agreement to the effect that a compromise settlement would be made on all property which was inventoried, or capable of identification after the fire, and that no settlement would be made on the property which was totally destroyed, and the latter would be left an open question for future litigation; and after entering into that oral agreement, the adjuster attempted to reduce same to writing, and the adjuster's agreement was the result. The adjuster's agreement does not purport to be a compromise settlement, but is merely a mutual declaration as to the amount of loss and damage, and it does not limit the amount of loss and damage to the property which was inventoried, or capable of identification after the fire. Hence, if the loss and damage, as expressed in the adjuster's agreement, covers all of the insured property, both that which was inventoried or capable of identification after the fire, and that which was totally destroyed, or if the adjuster's agreement is not a contract of settlement, then, in either event, the same does not express the oral contract, as shown by plaintiff's pleadings and evidence, and the trial court correctly refused the special charge because the issue of mutual mistake was an issue of fact for the jury.

### "Ninth Counter Proposition.

"The first assignment should be overruled because plaintiff's pleadings and evidence show that the adjuster's agreement is ambiguous, because the expression, 'the property,' could mean the property which was 'inventoried,' or it could mean the property which was 'insured,' and therefore the same was subject to parol explana-

tion. Hence, the meaning of the adjuster's agreement was a question of fact for the jury and not a question of law for the court.

"Tenth Counter Proposition.

"The first assignment should be overruled because plaintiff's pleadings and evidence show that the adjuster's agreement was entered into by reason of plaintiff's mistake, and the adjuster's fraud, in that, the plaintiff believed that the parol agreement was covered truthfully by the adjuster's agreement, and the adjuster knew that such was not the case and intentionally deceived plaintiff. Hence, the validity of the adjuster's agreement was a question of fact for the jury and not a question of law for the court.

"Eleventh Counter Proposition.

"The first assignment should be overruled, because plaintiff's pleadings and evidence show that the adjuster's agreement is not a binding obligation because the minds of the parties did not meet, in that, the plaintiff understood that he was making a settlement and that the settlement related only to the inventoried property, and the adjuster understood that it was not a settlement and that the instrument related to the entire insured property.

"Twelfth Counter Proposition.

"The first assignment should be overruled, because plaintiff's pleadings and evidence show that the adjuster's agreement is illegal and contrary to public policy, because the adjuster agreed with plaintiff that, if he would execute the adjuster's agreement, the adjuster and the insurance companies would not prosecute him for arson, and, if he failed to execute it, he would be prosecuted for arson, and the same was so executed."

[2] Our modified approval of the foregoing propositions may be stated thus: The pleadings and evidence raised all of the issues referred to in the foregoing counter propositions, and for that reason it would have been error for the trial court to have given the requested instruction. No charges were requested as to either of the issues referred to in these counter propositions; and therefore, if a finding in favor of Goodman upon either or all of them was necessary to sustain the judgment, it will be presumed that the trial court made such finding. Article 1985, Vernon's Sayles' Statutes.

Some other questions are presented in the brief of the plaintiffs in error which, after due consideration, are decided against them.

No reversible error has been pointed out, and the judgment is affirmed.

Affirmed.